I'm a New Yorker, so I'm a resident and I report at Los Angeles Department of Justice. I'm Randy Anderson. I'm a judge of the case in court. I'm sure you've read the brief. I think this case really hits the heart of what the ADA is about. It's why contractors in 2019, and I remember back in 1990, your minister was in this long term employee of Carter County. She got injured in the park doing defensive tactics. She has a severe back injury. Well, in my opinion, since this problem with the case, this is her second injury. She only had two injuries. She had one that wasn't severe. She had an injury in the back of her head. Her head's broken. It hasn't really been a slow week. It's already been a year. And it's not very good. It's not easy to operate. I mean, it was a worker's concept. She ended up choosing to continue to go into a teaching region in the U.S. And I think the evidence makes it clear that she never, she always wanted a new career. She didn't want to come out of the U.S. on a career path. Through the education, through the process, all the tests that they do, and in the long time that she was in the army, she's not able to do her old job. She needs to be working in the location for a year. And she really didn't know what she was going to do. It's not a good life. It's not a good salary. And I think she didn't return to the beginning itself. And these were accommodations in the U.S. And I think even in the sense that we're using standards of staying in accommodations under the VA, she didn't mention her admissions before that set up. And even if you are completely inconsistent with her, the thing that they did was, she couldn't get accommodated under the VA. So, eventually, she signed and told what she signed. My approach to this, I'm not a lawyer here, but I'll say it in writing. Well, it's what it says. It was, it didn't refer to the VA. And I think it was the agreement of my emotions in there, and the vulnerability of imitation. And, of course, it is a state law. I mean, there's a scene, a statutory scene. It's not called accommodations, but it's the same principle there. You try to accommodate somebody by joining them or keeping them in their job. So, I just feel that that's a really big point. With respect to some of that, she came to her own conclusion that this had to be a process figure. And I agree with many instances. If that ruling states that you can't sign, well, certainly that's just money for somebody under a rehabilitation statute. It doesn't matter. Other states, all over the country, whatever, they're bound to fall through the trap. Well, another matter would be to fall under the VA and, at the same time, the vulnerability is, you know, to me, it's something you can enter under whatever sort of exercise there might be for that, to go to a conditional rehab settlement and then send your other partner to come under the ADA. I mean, I think that would be clearly false, false, false. And, you know, I could just say, I mean, by doing this, you're kind of seeing the consequences of this. You're not just sitting in your office and just having a moment. You're doing a research report, you're looking at all the evidence that you can come to. Well, I mean, the exercise is pretty simple. It's a simple thing. You can do it in 10 or 40 minutes, and the funding is going to be, I think, at least $9 trillion, so it's not going to be much more. Okay. We have a question about the new reserve on June 2. This is from a journalist. I'm not sure if that's right. I'll give you a few more minutes. Okay. This is how traditionally it's done. It's kind of an interactive app. I'll pop up on it if you need it. And she's in the prison cell. She's on the internet searching for information, for confidentiality. And one of the questions is, do you think it's wrong that you're sitting in there and celebrating a decision that you've made? Or is it just to try to make a decision that you think is appropriate? Well, I think that's a good question. I think there are a number of workarounds. I mean, I think it's completely up to you. It's up to you. So, I mean, just because you're not looking at the funding, doesn't mean that you shouldn't produce it. And the first one is not good. I understand that. So, thank you for that. And I'm just wondering, in regards to creating the training and training your institutes for physicians, is it a challenge? I mean, they all need to be privileged. And I don't know about the region, but they all need to be privileged. And they're going to have an appointment and it sucks. That's not fair. Well, in some cases, you're going to just lay off your students, and they'll look for, I don't know, 530-minute period, which can, we're all getting, we've been doing this for two years, and it's been, we've been trying to teach this unit, but they are deaf on three different jobs. The sick day service, especially, is two jobs, which they have to train for, and they couldn't be used to. And most of them do have reservations. Now, they look for another job, and they all learn at different, different, different, different, different, different, different, and so, they've been trained for, to try to accommodate your own acquisition, and when you're seeing that you've been able to be able to do anything, that's just, anywhere else, anywhere else really. But you can never trust a piece of,          And so, it's not, it's not that fast. It's not that, it's not so fast. It's not that fast. It's not, it's not speed. It's not full speed.    you know, there's still some writing lessons to be, of where you would find some speed, it just takes 정말 you just need to look at it, relativistically, have to pull it to a degree, that would make it, it would quickly perturb your writing, or it would just deteriorate, you wouldn't want it anymore, you would want it to be worse, I've been through various cases of saying, you need to be part of it, and you just make sense, part of it, and the common thing you see, the way you see us as an entire, is that we turn out to be teachers, to learn from our fault, and we're both doing good things, we're teachers, we're kind, we're good, we're just teachers, we have a mission, and we think, it could have, it can, it could have been here, and you can just apply it to any specific position, it's your own, it's up to you to choose, and achieve anything, or achieve anything, or help each other, but, this is the, in most of these cases, we're a bit of a clutter, and it's all an assertion, but you know, that you're a person, and you see, it's just a, obviously, in most of these cases, to actually be able to, if you find a position, with employers, and they always have, sometimes to use, once in a while, and, or, you know, so, again, the, the job here, to be chosen, could have been there, could have been a contribution here, and, you know, whatever you wanted to do, and, to achieve anything, or achieve anything, or help each other, would have unfortunately, not really to do that, but, it was a requirement, to achieve, and, said that, that, the employer, contrary, could not help you, that was a, required announcement, in order to, eventually, achieve that, and, I don't really know how to answer that, but, it's actually, it's actually a challenge, that, you know, obviously, you couldn't, you couldn't, you can't present such an end, in order to, you could do this, you know, through our statute, you can't do a grand matter, you know, if you're a lady, or, whatever job you're applying for. So, I'd say, it's an increase, as a challenge, plus, a few days ago, public scientists, said, okay, I think you should, you know, change your, and, say, your three days, or whatever, and, continue to work, and, you know, you're saying, it's a matter of public policy, and, you shouldn't be, you know, required, to, you know, report something to your school, or, your SMC, and, your state, and, your subscriber circle, you cannot, you can't say, you know, this is, and,
judges: Hawkins, Murguia, Breyer